1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8   WENDY MICHELE VITALIS,                    NO.  C12-1074-JLR-JPD

9                          Plaintiff,

10        v.                                   REPORT AND
                                              RECOMMENDATION
11   CAROLYN W. COLVIN, Acting
     Commissioner of Social Security,[1]
12
                           Defendant.
13

14          Plaintiff Wendy Michele Vitalis appeals the final decision of the Commissioner of the

15   Social Security Administration ("Commissioner") which denied her applications for

16   Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C.

17   §§ 1381-83f, after a hearing before an administrative law judge ("ALJ").  For the reasons set

18   forth below, the Court recommends that the Commissioner's decision be REVERSED and

19   REMANDED.

20                  I.      FACTS AND PROCEDURAL HISTORY

21          At the time of the administrative hearing, plaintiff was a forty-year old woman with a

22   _____

23          [1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social
     Security.  Therefore, pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure,
24   Carolyn W. Colvin is substituted for Commissioner Michael J. Astrue as the defendant in this
     suit.

REPORT AND RECOMMENDATION - 1

high school education and an Associate of Arts Degree in general business. Administrative Record ("AR") at 40. Her past work experience includes employment as a gas station attendant and night stocker. AR at 60-62. She was last gainfully employed at a Shell gas station in 1999. AR at 331.

On October 8, 2008, plaintiff filed a claim for SSI payments, alleging an onset date of March 1, 2006. AR at 39. Plaintiff asserted that she is disabled due to affective disorders and alcohol addiction. AR at 70-71.

The Commissioner denied plaintiff's claim initially and on reconsideration. AR at 70-79. Plaintiff requested a hearing, which took place on October 6, 2010. AR at 18-69. On January 21, 2011, the ALJ issued a decision finding plaintiff not disabled and denied benefits based on his finding that plaintiff could perform a specific job existing in significant numbers in the national economy. AR at 18-27. The Appeals Council denied plaintiff's request for review, AR at 1-6, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g). On June 22, 2012, plaintiff timely filed the present action challenging the Commissioner's decision. Dkt. 3.

## II.      JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III.      STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

IV.     EVALUATING DISABILITY

As the claimant, Ms. Vitalis bears the burden of proving that she is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if her impairments

are of such severity that she is unable to do her previous work, and cannot, considering her age,

education, and work experience, engage in any other substantial gainful activity existing in the

national economy.  42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-

99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for

determining whether a claimant is disabled within the meaning of the Act.  *See* 20 C.F.R. §§

404.1520, 416.920.  The claimant bears the burden of proof during steps one through four.  At

step five, the burden shifts to the Commissioner.  *Id.*  If a claimant is found to be disabled at

any step in the sequence, the inquiry ends without the need to consider subsequent steps.  Step

one asks whether the claimant is presently engaged in "substantial gainful activity."  20 C.F.R.

§§ 404.1520(b), 416.920(b).[2]  If she is, disability benefits are denied.  If she is not, the

Commissioner proceeds to step two.  At step two, the claimant must establish that she has one

or more medically severe impairments, or combination of impairments, that limit her physical

or mental ability to do basic work activities.  If the claimant does not have such impairments,

she is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant does have a severe

impairment, the Commissioner moves to step three to determine whether the impairment meets

or equals any of the listed impairments described in the regulations.  20 C.F.R. §§ 404.1520(d),

416.920(d).  A claimant whose impairment meets or equals one of the listings for the required

twelve-month duration requirement is disabled.  *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed

in the regulations, the Commissioner must proceed to step four and evaluate the claimant's

---

[2] Substantial gainful activity is work activity that is both substantial, i.e., involves
significant physical and/or mental activities, and gainful, i.e., performed for profit.  20 C.F.R. §
404.1572.

residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).  Here, the

Commissioner evaluates the physical and mental demands of the claimant's past relevant work

to determine whether she can still perform that work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If

the claimant is able to perform her past relevant work, she is not disabled; if the opposite is

true, then the burden shifts to the Commissioner at step five to show that the claimant can

perform other work that exists in significant numbers in the national economy, taking into

consideration the claimant's RFC, age, education, and work experience.  20 C.F.R. §§

404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100.  If the Commissioner finds the

claimant is unable to perform other work, then the claimant is found disabled and benefits may

be awarded.

V.	DECISION BELOW

On January 21, 2011, the ALJ issued a decision finding the following:

1.	The claimant has not engaged in substantial gainful activity since October 8, 2008, the application date.

2.	The claimant has the following severe impairments: adjustment disorder with depressed mood, bipolar disorder, post-traumatic stress disorder, an alcohol abuse.

3.	The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

4.	After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she could perform simple, routine tasks and follow short, simple instructions. This individual could do work that needs little or no judgment and could perform simple duties that can be learned on the job in a short period. The claimant would have average ability to perform sustained work activities (i.e. can maintain attention and concentration; persistence and pace) in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule) within customary tolerances of employers rules regarding sick leave and absence.  She could have

occasional interactions with co-workers and supervisors and can work in close proximity to co-workers but not in a cooperative or team effort. The claimant could not deal with the general public as in a sales position or where the general public is frequently encountered as an essential element of the work process. Incidental contact with the general public is not precluded.

5.   The claimant is unable to perform any past relevant work.

6.   The claimant was born on XXXXX, 1970 and was 38 years old, which is defined as a younger individual age 18-49, on the application was filed.[3]

7.   The claimant has at least a high school education and is able to communicate in English.

8.   Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

9.   Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

10.   The claimant has not been under a disability, as defined in the Social Security Act, since October 8, 2008, the date the application was filed.

AR at 20-27.

## VI.   ISSUES ON APPEAL

The principal issues on appeal are:

1.   Did the ALJ err in assessing plaintiff's credibility?

2.   Did the ALJ err in evaluating the medical opinion evidence?

3.   Did the ALJ err in evaluating plaintiff's residual functional capacity ("RFC")?

4.   Did the ALJ err in evaluating the lay witness testimony of Mr. Deschamp?

5.   Did the ALJ err at step five?

Dkt. 14 at 1; Dkt. 15 at 2.

---

[3]  The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington.

REPORT AND RECOMMENDATION - 6

VII.    DISCUSSION

A.      The ALJ Did Not Err in Assessing Plaintiff's Credibility

      1.      *Standard for Evaluating Credibility*

As noted above, credibility determinations are within the province of the ALJ's responsibilities, and will not be disturbed, unless they are not supported by substantial evidence.  A determination of whether to accept a claimant's subjective symptom testimony requires a two-step analysis.  20 C.F.R. §§ 404.1529, 416.929; *Smolen*, 80 F.3d at 1281; SSR 96-7p.  First, the ALJ must determine whether there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms.  20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at 1281-82; SSR 96-7p.  Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms solely because they are unsupported by objective medical evidence.  *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1988).  Absent affirmative evidence showing that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony.  *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722.

When evaluating a claimant's credibility, the ALJ must specifically identify what testimony is not credible and what evidence undermines the claimant's complaints; general findings are insufficient.  *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722.  The ALJ may consider "ordinary techniques of credibility evaluation" including a reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains.  *Smolen*, 80 F.3d at 1284; *see also Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

2.       *The ALJ Did Not Err By Finding Plaintiff Less Than Credible*

The ALJ found that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above [RFC] assessment."  AR at 23-24.  Specifically, the ALJ found that plaintiff's (1) activities of daily living were inconsistent with her claimed level of limitations, and "exacerbations of her problems occurred at times in which any individual would feel more symptoms," (2) plaintiff has received conservative treatment, (3) plaintiff's symptoms improved when she consistently took her medications, and (4) there is some evidence plaintiff may not have applied for disability in the belief that she is actually disabled, and may not have performed to the best of her ability during testing.  AR at 23-24.

First, the ALJ notes that "in discussing her daily activities, the claimant stated that she went to the Indian Center for lunch and to hang out with friends.  Other activities included reading, watching television, using the computer, and attending [Alcohol Anonymous] AA meetings."  AR at 23.  The ALJ appears to contrast this description with the plaintiff's testimony that "she thought that she could work but she wasn't sure if she could work full time.  She also stated communication and working with people were difficult for her.  She explained that she blows little things out of proportion and cries on a daily basis."  AR at 23.  The ALJ further noted that plaintiff's "exacerbations of her problems occurred at times in which any individual would feel more symptoms," such as when plaintiff "contemplated turning herself into the police to face some jail time."  AR at 24.

Second, the ALJ noted that despite plaintiff's complaints related to her mental impairments, her treatment was conservative in nature.  Specifically, the ALJ noted that plaintiff was in counseling for over four years, but her most recent treatment consisted solely

of receiving medications from her primary caregiver.  AR at 25, 359-98.  The ALJ asserted that "although the claimant has received treatment for the allegedly disabling impairments, it has been routine and conservative in nature and not the type of treatment one would expect for a totally disabled person."  AR at 25.

Third, the ALJ observed that "improvement followed if the claimant maintained her treatment regimen."  AR at 24.  Plaintiff asserted that "after achieving medication compliance, she felt as if a cloud had lifted, making her only sorry that she had not taken the medications at an earlier time."  AR at 24.  Similarly, plaintiff had exhibited an improvement in her symptoms following a hospital stay in March 2008, and reported improvement when she "was taking appropriate medications during her prison stay in contrast to being off any medication for three weeks in July 2008."  AR at 24.

Finally, the ALJ stated that there is some evidence that plaintiff may not have applied for disability in the belief that she is actually disabled, and may not have answered all of the questions to the best of her ability.   AR at 23-24.  The ALJ pointed to plaintiff's admission "to Diana Cook, Ph.D., in May 2009 that she was applying for benefits at the urging of the Washington Department of Social and Health Services ("DSHS")," as well as "Dr. Cook's suggestion of low motivation and the uncertainty that the claimant answered all of the questions to the best of her ability."  AR at 24.

Plaintiff contends that the ALJ's observation that plaintiff experienced exacerbations of her problems "at times in which any individual would feel more symptoms," such as when plaintiff complained about feeling increased anxiety and agitation as she was preparing to turn herself into the police to face jail time, was not a specific and legitimate reason to discount her testimony.  Dkt. 14 at 18.  Plaintiff asserts that she has "provided multiple medical sources and statements regarding the severity of her impairments [and] supported that with testimony

1    regarding the limitations she faces on a daily basis related to her depression and anxiety.  At no

2    point did she claim exacerbation based solely on an encounter with the police." *Id.* at 19.

3    Plaintiff asserts that the ALJ's citation of this specific example "is emblematic of his failure to

4    view the record as a whole." *Id.*  Similarly, plaintiff claims that "the ALJ's remaining reasons

5    for rejecting the claimant['s] statements regarding severity of her impairments are all based on

6    carefully selected statements in the record which show that there were times when she felt less

7    depressed and was able to function better . . . [these statements] cannot be viewed in isolation

8    or used as the sole means of discrediting Ms. Vitalis." *Id. See also* Dkt. 16 at 7-8.

9           The Commissioner responds that the ALJ's reasons for finding plaintiff not credible

10   were clear and convincing.  Specifically, the Commissioner argues that plaintiff's daily

11   activities, as summarized in the ALJ's written decision, "bear on her believability as Plaintiff

12   testified to a degree of incapacity incompatible with the activities in which she engaged."  Dkt.

13   15 at 7 (citing *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012)) (providing that even

14   where a claimant's activities suggest "some difficulty functioning, they may be grounds for

15   discrediting the claimant's testimony to the extent that they contradict claims of a totally

16   debilitating impairment.").  Moreover, the amount of treatment a plaintiff receives is "an

17   important indicator of the intensity and persistence of [plaintiff's] symptoms." *Id.* at 7-8

18   (citing 20 C.F.R. § 416.929(c)(3); SSR 96-7p).  *See also Parra v. Astrue*, 481 F.3d 742, 750-51

19   (9th Cir. 2007) (providing that "evidence of 'conservative treatment' is sufficient to discount a

20   claimant's testimony regarding severity of an impairment.").  The Commissioner further

21   argues that the evidence shows that plaintiff experienced improvement when she was

22   compliant with her medication regimen, which is inconsistent with her allegations of disability.

23   *Id.* at 8 (citing *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006)

24   (holding that impairments controlled with treatment cannot support disability)).

REPORT AND RECOMMENDATION - 10

1    Finally, the Commissioner asserts that the ALJ did not err by citing to Dr. Cook's

2    statements that plaintiff admitted in May 2009 she was applying for disability payments

3    because DSHS encouraged her to do so, and that plaintiff may not have answered all of her

4    questions to the best of her ability. *Id*. at 9 (citing AR at 24-25, 54, 330, 333). Dr. Cook

5    asserted, "It was uncertain as to whether claimant answered all questions to the best of her

6    ability. Her condition does seem treatable." AR at 333. The Commissioner asserts that

7    evidence of self-limitation and/or lack of motivation by a claimant are appropriate

8    considerations. *See Osenbrock v. Apfel*, 240 F.3d 1157, 1165-66 (9th Cir. 2001).

9    As a general proposition, the Court agrees with plaintiff's argument that an ALJ is

10   prohibited from cherry picking the evidence by only accepting the portions supportive of the

11   ALJ's conclusion, while ignoring any evidence dictating an opposite conclusion. *See e.g.,*

12   *Gallant v. Heckler*, 753 F.2d 1450, 1455-56 (9th Cir. 1984) (ALJ "cannot reach a conclusion

13   first, and then attempt to justify it by ignoring competence evidence in the record that suggests

14   an opposite result.") (cited source omitted). However, plaintiff has not persuasively

15   demonstrated that the ALJ did so in this case. For example, plaintiff's argument that "at no

16   point did [plaintiff] claim exacerbation based solely on an encounter with the police" is

17   inapposite. The ALJ did not err by citing to plaintiff's statement to Dr. Luster at the Seattle

18   Indian Health Board that her legal issues, including the fact that "she has to turn herself in and

19   probably do some jail time . . . has been causing her agitation and anxiety." AR at 265. The

20   increased stress resulting from plaintiff's DUI charges and jail time were referenced in other

21   places in the record as well. AR at 222.

22   In addition, the ALJ permissibly found that plaintiff's daily activities, which included

23   reading, watching television, socializing with friends, using the computer, attending AA

24   meetings, and using public transportation, were inconsistent with the level of disability claimed

REPORT AND RECOMMENDATION - 11

1   by plaintiff.  AR at 44-45.  Furthermore, the ALJ did not err by observing that, although

2   plaintiff has received relatively conservative treatment, when plaintiff consistently adheres to

3   her treatment regimen she experiences an improvement of her symptoms.  Plaintiff testified

4   during the hearing that her medication helped control her symptoms more effectively when she

5   was forced to follow a consistent schedule.  For example, when she was "in jail and having to

6   take it at a certain time and being in the med line and taking it regularly is when I felt pretty

7   good, but then, you know, things get kind of hectic, and I don't take my medication as

8   regularly as I should [now]."  AR at 48.  Similarly, during plaintiff's two-week hospital stay in

9   March 2007, she reported improvement due in large part to "increased time on the

10  medications."  AR at 221.

11          Finally, although the ALJ did not find that plaintiff was malingering, the ALJ did not

12  err by citing to evidence that plaintiff may lack the motivation to work.  *See Osenbrock*, 240

13  F.3d at 1165 (noting that evidence reflecting restricted activities is a self-imposed lifestyle

14  choice, and that "the claimant does not possess the motivation to do more," is a permissible

15  reason to discount a claimant's credibility).  The reasons cited by the ALJ for finding plaintiff

16  less than credibility has substantial support in the record and, in light of the deference this

17  Court owes to the ALJ's credibility findings, will not be disturbed.  The ALJ did not err.

18          B.      The ALJ Did Not Err in Evaluating the Opinions of the Consultative Physicians

19                  1.      *Standards for Reviewing Medical Evidence*

20          As a matter of law, more weight is given to a treating physician's opinion than to that

21  of a non-treating physician because a treating physician "is employed to cure and has a greater

22  opportunity to know and observe the patient as an individual."  *Magallanes v. Bowen*, 881 F.2d

23  747, 751 (9th Cir. 1989); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).  A treating

24  physician's opinion, however, is not necessarily conclusive as to either a physical condition or

REPORT AND RECOMMENDATION - 12

the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751. If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his/her conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence. *Id.* An ALJ may reject the controverted opinions of an examining physician only by providing specific and legitimate reasons that are supported by the record. *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

Opinions from non-examining medical sources are to be given less weight than treating or examining doctors. *Lester*, 81 F.3d at 831. However, an ALJ must always evaluate the opinions from such sources and may not simply ignore them. In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it. Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2. Although an ALJ generally gives more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is

consistent with other independent evidence in the record.  *Thomas v. Barnhart*, 278 F.3d 947,

957 (9th Cir. 2002); *Orn*, 495 F.3d at 632-33.

                    2.        *Mathew Comrie, Psy.D.*

         Dr. Comrie completed a "psychiatric review" of plaintiff's medical

records from October 8, 2008 to October 7, 2009.  AR at 335-47.  Dr. Comrie identified

diagnoses of affective disorders and substance addiction disorders, but indicated that plaintiff's

impairments "severe but not expected to last 12 months."  AR at 335.  With respect to

plaintiff's functional limitations, he assessed only mild restrictions of activities of daily living,

difficulties in maintaining social functioning, and maintaining concentration, persistence, and

pace, and "one or two" episodes of decompensation of extended duration.  AR at 345.

         Plaintiff contends that the ALJ erred by failing to mention Dr. Comrie's opinion, as

Dr. Comrie "provided the only DDS reviewing physician opinion that addressed Ms. Vitalis's

functioning, but only under the 'B criteria.'"  Dkt. 14 at 3.  Plaintiff asserts that the ALJ's

failure to consider and explain the weight given to this opinion is alone legal error and grounds

for reversal.  *See id.*

         The Commissioner "concedes that the ALJ did not discuss this opinion, but submits this

error was harmless.  Dr. Comrie found Plaintiff's impairments would not last the necessary

twelve months required to establish disability and would impose mild limitations in the areas

of activities of daily living, social, and concentration, persistence, or pace."  Dkt. 15 at 12

(citing AR at 345).  Although Dr. Comrie assessed plaintiff with one or two episodes of

decompensation of extended duration, he ultimately opined that plaintiff's limitations would

not last twelve months.  AR at 345, 347.  The Commissioner asserts that because the ALJ

found plaintiff's mental impairments severe at step two, "any error by the ALJ in not

1  addressing this opinion was harmless as no substantive right was impacted." Dkt. 15 at 13

2  (citing *Ludwig v. Astrue*, 681 F.3d 1047, 1053-55 (9th Cir. 2012)).

3           The Court agrees that the ALJ's error was harmless. As mentioned above, Dr.

4  Comrie's opinion does not support plaintiff's allegations of disability impairments. On the

5  contrary, Dr. Comrie opined that her impairments would not last the necessary twelve months

6  required to establish disability, and would impose only mild limitations in the areas of

7  activities of daily living, social, and concentration, persistence, or pace. *See Stout v.*

8  *Commissioner, Soc. Sec. Admin*., 454 F.3e 1050, 1055 (9th Cir. 2006) (recognizing application

9  of harmless error in Social Security context where a "mistake was nonprejudicial to the

10 claimant or irrelevant to the ALJ's ultimate disability conclusion."). *Accord Molina*, 674 F.3d

11 at 1115 (ALJ's error may be deemed harmless where it is " 'inconsequential to the ultimate

12 nondisability determination.'"). This error does not require reversal.

13                  *3.      Carla Hellekson, M.D.*

14          Dr. Hellekson evaluated plaintiff at the request for DSHS on June 24, 2008. She

15 diagnosed bipolar disorder, alcohol dependence, pain medication dependence, and noted

16 "severe" verbal expression of anxiety or fear and "marked" depressed mood and hyperactivity.

17 AR at 409. Dr. Hellekson did not find the plaintiff to be suffering from any functioning

18 limitations that would affect her ability to work, based upon plaintiff's performance during the

19 standard cognitive exam. AR at 410. However, Dr. Hellekson did consider plaintiff

20 "severely" limited with respect to her ability to relate appropriately to co-workers and

21 supervisors, interact appropriately with public contacts, and tolerate the pressures of a normal

22 work setting. AR at 410. She further estimated that plaintiff's limitations would be present for

23 a minimum of one year and a maximum of two years. AR at 410.

24

REPORT AND RECOMMENDATION - 15

1    The ALJ assigned "little weight" to Dr. Helleckson's assessment, because she based her

2  severe limitations regarding plaintiff's social functioning "on today's interview observations."

3  AR at 25.  In addition, the ALJ noted that Dr. Helleckson suggested that "any funding be

4  contingent with good compliance with COD treatment and C&S.  Thus, it appears Dr.

5  Hellekson believe the claimant's condition to be linked to the claimant's lack of sobriety."  AR

6  at 25.  Furthermore, the ALJ noted that Dr. Helleckson did not "render[] an opinion about what

7  the claimant can still do despite her impairments."  AR at 25.

8    Plaintiff contends that the ALJ erred by rejecting Dr. Helleckson's opinion.  Plaintiff

9  asserts that "it is unclear how the ALJ expects a consultative examiner and the patient to obtain

10  and provide information to complete a mental health assessment, if not 'observation' and

11  'reporting.'"  Dkt. 14 at 8.  The Commissioner responds that the ALJ properly "found the

12  extreme limitations found by [Dr. Helleckson] were inconsistent with the findings expressed in

13  [her] evaluation[] or lacked the necessary medical signs and laboratory findings to support

14  such extreme limitations."  Dkt. 15 at 14.

15    Without more, plaintiff has not shown that the ALJ erred in evaluating Dr.

16  Helleckson's opinion.  The ALJ provided three clear and convincing reasons for assigning Dr.

17  Helleckson's opinion little weight.  The ALJ did not err.

18    *4.    Diana Cook, Ph.D.*

19    Dr. Cook performed a consultative evaluation of plaintiff at the request of the SSA on

20  May 7, 2009.  She reviewed inpatient records consisting of a discharge summary from

21  Harborview Medical Center showing plaintiff's GAF score of 20 at admission, and 35 at

22  discharge.  She also reviewed treatment notes from the Seattle Indian Health Board.[4]  Based on

23

24    [4] The GAF score is a subjective determination based on a scale of 1 to 100 of "the
clinician's judgment of the individual's overall level of functioning."  AMERICAN PSYCHIATRIC

her interview with plaintiff and review of these records, Dr. Cook diagnosed plaintiff with adjustment disorder with depressed mood, alcoholism in sustained remission, rule out dependent/avoidant features and a GAF score of 47.  Dr. Cook did not assess any functional limitations.  AR at 330-34.

The ALJ assigned "some weight" to Dr. Cook's opinion, but only "little weight" to the GAF score of 47.  AR at 25.  Specifically, the ALJ asserted that "this low score is inconsistent with the findings expressed in the evaluation report," which described plaintiff's strong performance on the mental status exam.  AR at 25.  In addition, the ALJ noted that this low GAF assessment "appears to be based on non-mental factors of unemployment, long-term separation from her family, and 'possibly low motivation.'"  AR at 25.

Plaintiff does not advance any arguments specifically related to the ALJ's rejection of Dr. Cook's assessment of plaintiff's GAF score, apart from arguing that the three consultative examiners' opinions were uncontradicted and therefore can only be rejected for clear and convincing reasons.  Dkt. 14 at 8.  In her reply brief, plaintiff charges the Commissioner with inadequately responding to plaintiff's arguments because "the brevity of the Commissioner's response . . . evidences the weakness of the ALJ's findings."  Dkt. 16 at 4-5.

---

ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32-34 (4th ed. 2000). A GAF score falls within a particular 10-point range if either the symptom severity or the level of functioning falls within the range.  *Id.* at 32.  For example, a GAF score of 51-60 indicates "moderate symptoms," such as a flat affect or occasional panic attacks, or "moderate difficulty in social or occupational functioning."  *Id.* at 34.  A GAF score of 41-50 indicates "[s]erious symptoms," such as suicidal ideation or severe obsessional rituals, or "any serious impairment in social, occupational, or school functioning," such as the lack of friends and/or the inability to keep a job.  *Id.*  A GAF score of 31-40 indicates "some impairment in reality testing and communication" or "major impairment in several areas, such as work or school, family relations, judgment, thinking or mood."  A GAF score of 21-30 indicates "behavior is considerably influenced by delusions or hallucinations" or "serious impairment in communications or judgment" or "inability to function in all areas."  *Id.*

The Commissioner asserts that the ALJ did not err because "internal inconsistencies within a physician's report constitute relevant evidence in judging the weight to be attributed to that report." Dkt. 15 at 14 (citing Morgan, 169 F.3d at 603). In addition, the Commissioner asserts that it is the province of the ALJ to determine whether a medical opinion is contradicted by that same doctor's notes, observations, and opinions. *Id.* (citing *Bayliss*, 427 F.3d at 1216).

The Court finds that plaintiff's broad assertion that the ALJ erred in evaluating Dr. Cook's opinion, without more, to be insufficient, as plaintiff failed to advance a sufficiently-developed argument. As argued by the Commissioner, the ALJ provided several reasons for only affording "little weight" to Dr. Cook's GAF assessment. The Court finds these reasons clear and convincing, and supported by substantial evidence in the record.

### 5. *Dana Harmon, Ph.D.*

Dr. Harmon performed a consultative examination of plaintiff on May 8, 2009. She reviewed Dr. Hellekson's evaluation, interviewed plaintiff, and administered tests such as a Mini Mental Status Examination, the Beck Anxiety Inventory, and Beck Depression Inventory. AR at 399-407. Dr. Harmon assessed only "mild" functional difficulties. As the basis for this rating, Dr. Harmon described plaintiff's work history, the fact that plaintiff "has been out of the job market for about nine years, raising her children, going through treatment, and establishing her recovery. Wendy has a [MMSE] score of 28, which is weak, but still within normal limits." AR at 400. Dr. Harmon assessed plaintiff as "severely" limited in her ability to tolerate the pressures of a normal workplace setting, and markedly limited in her ability to relate appropriately to co-workers and supervisors or interact appropriately with the public. AR at 400.

The ALJ afforded little weight to Dr. Harmon's opinions because Dr. Harmon "appears to rely quite heavily on the claimant's subjective reporting at arriving at his conclusions

REPORT AND RECOMMENDATION - 18

1    regarding the severity of the claimant's cognitive and social functioning."  AR at 25.  In

2    addition, "there is no evidence of the particular medical signs and laboratory findings relied

3    upon in reaching the opinion," and Dr. Harmon also did not provide "an opinion about what

4    the claimant can still do despite her impairments."  AR at 25.

5         Plaintiff argues that the ALJ erred by rejecting Dr. Harmon's opinion because Dr.

6    Harmon relied "quite heavily on the claimant's subjective reporting," AR at 25, because "a

7    patient's reports of complaints, or history, is an essential diagnostic tool."  Dkt. 14 at 8 (citing

8    *Brand v. Sec. of Dep't of Health, Educ. And Welfare*, 623 F.2d 523, 526 (8th Cir. 1980)).  The

9    Commissioner responds that "a medical source's opinion is not entitled to controlling weight

10   when it is not well-supported by medically acceptable clinical and laboratory diagnostic

11   techniques[.]"  Dkt. 15 at 14 (citing SSR 96-2p).  In addition, the Commissioner argues that the

12   ALJ properly rejected Dr. Harmon's opinion because "the ALJ found these opinions were

13   based upon Plaintiff's incredible statements.  The ALJ may reject physician opinions

14   predicated upon reports of a claimant found not credible."  *Id.* at 13 (citing *Tommasetti*, 533

15   F.3d at 1041; *Tonapetyan*, 242 F.3d at 1149).

16        The ALJ provided several clear and convincing reasons for affording "little weight" to

17   Dr. Harmon's opinion.  For example, the ALJ could reasonably discount Dr. Harmon's opinion

18   because of her reliance on plaintiff's subjective reports.  AR at 25.  The Ninth Circuit has

19   consistently held that an ALJ may properly reject a physician's opinion if it reflects the

20   claimant's subjective reports concerning his or her condition, "with little independent analysis

21   or diagnosis."  *Tommasetti*, 533 F.3d at 1041.  As mentioned above, instead of describing

22   medical signs or findings that supplied "the basis for each rating" regarding plaintiff's

23   functional limitations, Dr. Harmon described plaintiff's self-report regarding her work history,

24   struggles with addition, family life, and moods.  AR at 401.  *See Tonapetyan*, 242 F.3d at 1149.

REPORT AND RECOMMENDATION - 19

The ALJ did not err in evaluating Dr. Harmon's opinion.

           6.    *Cassandra Clark, Ph.D.*

     Dr. Clark evaluated plaintiff on March 25, 2010.  AR at 352-58.  Specifically, Dr. Clark administered a MMSE to measure any cognitive impairment, and reviewed the evaluations of Dr. Harmon and Hellekson.  Dr. Clark diagnosed bipolar disorder and anxiety disorder, and assessed a GAF score of 45, which reflected "serious impairment in social and occupational functioning.  Rating based on client's presentation in the session, psychometric tests administered during the examination, client's report of history, and records reviewed."  AR at 354.

     With respect to plaintiff's depressive symptoms, Dr. Clark opined that plaintiff would have "difficulty keeping to a schedule . . . Difficulty sustaining persistence and pace in a competitive working environment.  Psychomotor slowing would result in working at less productive pace than expected in competitive employment situation."  AR at 354.  With respect to plaintiff's "mood lability," Dr. Clark found that plaintiff would have "difficulty interacting with others claimant's behavior may become either overly intrusive or excessively withdrawn."  AR at 354.  In addition, Dr. Clark opined that plaintiff's anxiety and panic caused "difficulty interacting with others, client may bolt from work situation if [this] anxiety becomes unmanageable or if she experiences a panic attack."  AR at 354.

     The ALJ gave Dr. Clark's opinion "some weight."  AR at 24.  The ALJ summarized Dr. Clark's findings, and stated that "under her evaluation of cognitive and social factors Dr. Clark assigned mostly mild to moderate degree of severity.  She did opine the claimant had a 'marked' degree of severity with respect to ability to interact appropriately in public contacts. AR at 25.  The ALJ noted, however, that "other than stating 'with [treatment], she should be able to work but will probably need the services of DVR' Dr. Clark does not provide an

1    opinion about what the claimant can still do despite her impairment."  AR at 25.  The ALJ

2    "incorporated Dr. Clark's findings into the claimant's residual functional capacity by limiting

3    public interactions and interactions with co-workers and supervisors."  AR at 25.

4        Plaintiff contends that "this is insufficient; the ALJ fails to explain what weight he gave

5    to Dr. Clark's other functional limitations, or why he selected only one functional limitation

6    imposed by Dr. Clark and rejected the remaining multiple functional limitations."  Dkt. 14 at 8.

7    The Commissioner responds that contrary to plaintiff's argument that the ALJ failed to

8    incorporated all of the limitations assessed by Dr. Clark, "the ALJ incorporated Dr. Clark's

9    findings in framing Plaintiff's [RFC].  The limitations assessed by the ALJ in the [RFC]

10   finding, were in fact founded upon the limitations assessed by Dr. Clark."  Dkt. 15 at 14.

11       Plaintiff replies that the ALJ failed to incorporate into the RFC Dr. Clark's finding that

12   plaintiff's depression would cause her to have "difficulty keeping to a schedule . . . [and]

13   sustaining persistence and pace in a competitive working environment.  Psychomotor slowing

14   would result in working at a less productive pace than expected in a competitive employment

15   situation."  Dkt. 16 at 5 (citing AR at 354).  Plaintiff asserts that "none of these limitations

16   were incorporated in the ALJ's RFC, although a similar limitation presented to the VE resulted

17   in testimony that there would be no jobs that a person with such limitations could perform.

18   Thus, plaintiff contends that neither the RFC assessment, nor the corresponding hypothetical to

19   the VE, included Dr. Clark's assertion that plaintiff had 'severe' difficulties in concentration,

20   persistence, or pace.  *Id*. at 5-6.

21       Plaintiff fails to demonstrate error.  The Ninth Circuit has found that "an ALJ's

22   assessment of a claimant adequately captures restrictions related to concentration, persistence,

23   or pace where the assessment is consistent with restrictions identified in the medical

24   testimony."  *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1173-74 (9th Cir. 2008) (citing

1    *Howard v. Massanari*, 255 F.3d 577, 582 (8th Cir. 2001) and *Smith v. Halter*, 307 F.3d 377,

2    379 (6th Cir. 2001)).  In *Stubbs-Danielson*, the Ninth Circuit held that the ALJ's limitation to

3    "simple work" was consistent with a doctor's opinion that the claimant had a restricted ability

4    to maintain concentration, persistence, and pace.  *Id*. at 1174.  Specifically, "the ALJ translated

5    [the claimant's] condition, including the pace and mental limitations, into the only concrete

6    restrictions available to him – [a doctor's] recommended restriction to 'simple tasks.'  This

7    does not, as [the claimant] contends, constitute a rejection of [that doctor's] opinion."  *Id*.

8    Here, the ALJ relied on the medical evidence in assessing plaintiff as able to "perform simple,

9    routine tasks and follow short, simple instructions.  This individual could do work that needs

10   little or no judgment and could perform simple duties that can be learned on the job in a short

11   period."  AR at 23.  Plaintiff does not discuss the *Stubbs-Danielson* decision, or demonstrate

12   by other means that these limitations were inconsistent with Dr. Clark's opinion.

13        In any event, even assuming that Dr. Clark's opinion regarding plaintiff's ability to

14   maintain concentration, persistence, and pace is inconsistent with the ALJ's limitation to

15   "simple, routine tasks" in the RFC assessment, the Court finds that the ALJ provided a clear

16   and convincing reason that would justify failing to adopt Dr. Clark's opinion in full.  As

17   discussed above, the ALJ asserted that "[o]ther than stating 'with [treatment], she should be

18   able to work but will probably need the services of DVR[,]' Dr. Clark does not provide an

19   opinion about what the claimant can still do despite her impairment."  AR at 25.  Especially in

20   light of Dr. Clark's prognosis that "with [treatment], she should be able to work," this was a

21   clear and convincing reason to decline to adopt Dr. Clark's opinion regarding plaintiff's

22   "severe" limitations resulting from her depression.

23        Contrary to Dr. Clark's assessment of "severe" limitations resulting from depression,

24   the Court can reasonably infer from the ALJ's statements elsewhere in his written decision that

REPORT AND RECOMMENDATION - 22

the ALJ considered the limitations resulting from plaintiff's depressive symptoms to be only "mild" in nature. *See Batson*, 359 F.3d at 1193 (under the substantial evidence test, the Commissioner's findings must be upheld if supported by inferences reasonably drawn from the record). Specifically, at step two of the sequential evaluation process, the ALJ identified plaintiff's depression as a non-severe impairment. The ALJ observed that "[d]epression is mentioned in some of the medical reports. However, the record does not show the claimant was treated for depression but rather was treated for bipolar disorder. I note the symptoms of depression are shared with her established diagnosis of bipolar disorder, a severe impairment as discussed above." AR at 21.

Similarly, in the ALJ's discussion of the "paragraph B" criteria, the ALJ expressly adopted Dr. Clark's finding that "in social functioning, the claimant has moderate difficulties," but found that plaintiff had only "mild" difficulties maintaining concentration, persistence, or pace. AR at 22. Specifically, the ALJ found that with respect to plaintiff's "concentration, persistence or pace, the claimant has mild difficulties. Her thought was linear, logical, organized and goal-directed" and the ALJ noted that plaintiff has consistently performed well on mental status examinations. AR at 22, 24.

Accordingly, the Court can reasonably infer that the ALJ adopted Dr. Clark's opinion with respect to plaintiff's restrictions in social functioning, but declined to adopt Dr. Clark's opinion that plaintiff's "depression" resulted in "[d]ifficulty sustaining persistence and pace in a competitive working environment," AR at 354, based upon plaintiff's consistently strong performance on mental status evaluations. Without more, plaintiff has not shown error by the ALJ in evaluating Dr. Clark's opinion.

1        C.      The ALJ Did Not Err in Assessing Plaintiff's RFC

2            Plaintiff's final claim is a restatement of her prior assertions of error.  Plaintiff contends

3    that the ALJ erred by failing "to include the limitations that Ms. Vitalis would have marked to

4    severe 'limitation in her ability to respond appropriately to and tolerate the pressures and

5    expectations of a normal workweek setting' as Drs. Clark, Hellekson, and Harmon all found."

6    Dkt. 14 at 11.  Plaintiff further asserts that "the ALJ's rejection of this limitations (sic) and

7    failure to include it in the RFC renders the RFC useless," because the VE's testimony provided

8    that an individual with this limitation "would not maintain employment at any positions."  *Id.*

9    Thus, plaintiff restates her prior claims regarding the medical opinion evidence, alleging that if

10   these errors had not occurred, the ALJ would have assigned a more limited RFC (and therefore

11   found her disabled under the regulations).

12           The Commissioner responds that "the ALJ is not required to include opinion evidence

13   that has been properly discounted in the residual functional capacity finding."  Dkt. 15 at 16

14   (citing *Batson*, 359 F.3d at 1197; *Osenbrock*, 240 F.3d at 1164-66)).  The Commissioner

15   asserts that although plaintiff argues that the ALJ erred by failing to "include the additional

16   limitations argued for in her brief," the ALJ's RFC finding properly "included all work related

17   limitations demonstrated by the reliable evidence."  *Id.* at 17.

18           Because the Court has affirmed the findings of the ALJ as to plaintiff's prior

19   assignments of error, it must also conclude that there was no error in determining plaintiff's

20   RFC.  Plaintiff has pointed to no credible evidence, apart from plaintiff's subjective complaints

21   and medical opinions which were rejected by the ALJ, establishing the additional limitations

22   that she believes should have been included in the RFC assessment.  Accordingly, the ALJ did

23   not err by omitting these additional limitations from the RFC assessment.  *See Carmickle v.*

24   *Comm'r of Soc. Sec. Admin.*, 553 F.3d 1155, 1164-65 (9th Cir. 2008) (holding that an ALJ's

RFC assessment need not include impairments for which the medical records do not establish any work related impairments).

D.     The ALJ Did Not Err in Evaluating the Lay Witness Testimony

1.     *Standards for Evaluating Other Source Opinions*

In order to determine whether a claimant is disabled, an ALJ may consider lay-witness sources, such as testimony by nurse practitioners, physicians' assistants, and counselors, as well as "non-medical" sources, such as spouses, parents, siblings, and friends.  *See* 20 C.F.R. § 404.1513(d).  Such testimony regarding a claimant's symptoms or how an impairment affects his/her ability to work is competent evidence, and cannot be disregarded without comment. *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993).  This is particularly true for such non-acceptable medical sources as nurses and medical assistants.  *See* Social Security Ruling ("SSR") 06-03p (noting that because such persons "have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists," their opinions "should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file."). If an ALJ chooses to discount testimony of a lay witness, he must provide "reasons that are germane to each witness," and may not simply categorically discredit the testimony.  *Dodrill,* 12 F.3d at 919.

2.     *Gary Deschamp*

Plaintiff's friend, Gary Deschamp, provided an adult function report on April 12, 2009. AR at 192-99.  Mr. Deschamp indicated that he has known plaintiff for over twenty years.  AR at 192.  When asked to describe what plaintiff does from the time she wakes up until going to bed, he stated that she does "nothing."  AR at 192.  However, he later indicated that plaintiff

shops, walks, is able to use public transportation, and attends medical appointments.   AR at 25-26.  He noted that with respect to hobbies and interests, "she tries everything but doesn't ever finish." AR at 196.  With respect to plaintiff's social functioning, he observed that "she's not very social" and "she's always been a loner." AR at 197.   He stated that plaintiff can pay attention for "two minutes maybe," and that she does not follow written or social instructions very well.  AR at 197.  Mr. Deschamp further stated that plaintiff gets along well with authority figures.  AR at 198.  However, he indicated that she has been fired or laid off from a job because of problems getting along with other people, and commented that "she argues with everyone." AR at 198.  He also noted that she has "fear of going to busy places with alot (sic) of people around."  AR at 198.

The ALJ noted that he considered Mr. Deschamp's testimony, but "this document provided only inconsistencies."  AR at 25-26.  The ALJ commented that Mr. Deschamp "wrote that the claimant did 'nothing' during the day. Yet, he also wrote that the claimant managed her finances, shopped, walked, used public transportation, and attended medical appointments."  AR at 25-26.

Plaintiff argues that Mr. Deschamp's observations are not inconsistent.  Dkt. 14 at 20-21.  Plaintiff contends that "the ALJ only stated Mr. Deschamp provided 'inconsistencies,' but did not state what those inconsistencies are . . . But the ALJ must actually identify the inconsistencies in the record."  Dkt. 16 at 8.  The Commissioner responds that the ALJ did not err, because 'an inconsistency between a claimant's activities and a lay witness's statement is a specific, germane, and sufficient reason to discredit the lay witness."  Dkt. 15 at 10 (citing *Carmickle*, 533 F.3d at 1163-64).

The ALJ did not err by finding Mr. Deschamp's lay witness testimony not entirely credible because it "provided only inconsistencies."  AR at 25.  Contrary to plaintiff's

1    assertion, the ALJ properly identified an example by pointing out that Mr. Deschamp's

2    statement that plaintiff did "nothing" during the day was inconsistent with his later observation

3    that she managed her finances, shopped, walked, used public transportation, and attended

4    medical appointments.  AR at 25-26.  Additional inconsistencies in Mr. Deschamp's testimony

5    are apparent.  Mr. Deschamp's statement that plaintiff does "nothing" all day conflicts with his

6    comment that plaintiff "tries everything but doesn't ever finish" any of her hobbies.  AR at

7    196.  Similarly, Mr. Deschamp indicated on the one hand that plaintiff interacts well with

8    authority figures, but subsequently states she has been fired or laid off from a job because of

9    problems getting along with other people, and commented that "she argues with everyone."

10   AR at 198.  Thus, the ALJ articulated a germane reason to reject Mr. Deschamp's testimony,

11   and this reason was supported by substantial evidence in the record.

12                    E.       The ALJ Erred at Step Five

13           At the administrative hearing, the ALJ's first hypothetical posed to the VE included a

14   limitation to only incidental contact with the general public, but did not include any limitations

15   on the claimant's interaction with co-workers and supervisors.  AR at 62-63.  The VE

16   identified the representative jobs of dishwasher and library shelver, but also commented that

17   "probably the best description with this particular hypothetical would be the night cleaner.  It

18   would be very isolated from people."  AR at 63.  The ALJ's second hypothetical included an

19   additional limitation to "occasional" interactions with co-workers and supervisors, and the ALJ

20   clarified that the individual "could work in close proximity to co-workers, but not in [a]

21   cooperative or team effort . . . what I'm getting at is the employee's essentially doing their own

22   job tasks."  AR at 63-64.  The VE identified the jobs of "shelver" and "dishwasher."  AR at 64.

23           The ALJ's RFC assessment limited plaintiff to only incidental contact with the general

24   public, as well as "occasional interactions with co-workers and supervisors[.]"  AR at 23.  The

1    ALJ provided that plaintiff "can work in close proximity to co-workers but not in a cooperative

2    or team effort."  AR at 23.  The ALJ then asserted that the VE identified the positions of

3    dishwasher and night cleaner to be viable options based upon these limitations:

4           The vocational expert testified that given all of these factors the individual would
            be able to perform the requirements of representative occupations such as a
5           dishwasher (DOT #318.687-010), medium unskilled work with an SVP of 2 that
            has 8,000 jobs in Washington and 370,000 jobs in the nation, and as a night
6           cleaner (DOT #323.687-014), light unskilled work with an SVP of 2 that has
            4,000 jobs in Washington and 240,000 jobs in the nation.
7
     AR at 27.
8
            Plaintiff contends that the ALJ erred in multiple ways.  First, plaintiff points out that
9
     the VE did not testify that the hypothetical individual with claimant's limitations "could work
10
     as a night cleaner; she testified that she could perform work as a dishwasher and a 'Shelver.'
11
     Because the ALJ wrongly cited dishwasher and night cleaner, we are left with only the
12
     dishwasher to consider."  Dkt. 14 at 15.  Second, the ALJ did not ask if the VE's testimony
13
     conflicted with the Dictionary of Occupational Titles ("DOT"), and "a review of the DOT's
14
     description of the occupation . . . of 'dishwasher' reveals that the Vocational Expert's
15
     testimony significantly conflicts with the DOT."  Id.
16
            Specifically, plaintiff contends that DOT # 318.687-010, which the VE characterized as
17
     the "dishwasher" position, is actually the job of "kitchen helper," which includes alternative
18
     titles such as "cookee, cook helper, kitchen hand, kitchen porter, [and] kitchen runner."  Dkt.
19
     14 at 16.  Plaintiff points out that the DOT description of this occupation also includes many
20
     more duties than the VE's testimony that it involves "carrying the dishes into the kitchen by
21
     themselves" and "putting them in the machine to wash."  AR at 64.  For example, the position
22
     involves "maintain[ing] kitchen work areas and restaurant equipment and utensils in clean and
23
     orderly condition" by performing duties such as sweeping and mopping floors, washing
24

worktables and surfaces, removing trash, washing pots and pans by hand, polishing silver, transferring supplies and equipment by hand or handtruck, setting up banquet tables, washing and peeling vegetables, and loading or unloading trucks picking up or delivering supplies and food. *See id.*

Thus, plaintiff asserts that the VE's description of this job was "significantly contradicted by the above DOT description." Dkt. 14 at 16. Plaintiff asserts that the ALJ may not rely on a VE's testimony that contradicts the DOT in the absence of persuasive evidence to support the deviation. *Id.* (citing *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995); *Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999)). Plaintiff states that "[h]ere, the vocational expert did not explain why her testimony differed from the DOT and the ALJ did not elicit a reasonable explanation from her. This procedural error could have been harmless if there were no conflict, or if the vocational expert had provided sufficient support for her conclusion so as to justify any potential conflicts," but this is not the case. *Id.* at 17.

The Commissioner concedes that the ALJ failed to ask the VE, Dr. Stewart, if his or her testimony conflicted with the DOT. Dkt. 15 at 188. However, the Commissioner argues that the VE's error in "identify[ing] the wrong DOT number" was harmless, because "it was clear from the testimony that the vocational expert had identified dishwasher as a job Plaintiff could perform and not kitchen helper and provided testimony based upon his knowledge of the skills necessary to be a dishwasher." *Id.* (citing AR at 63-64). The Commissioner contends that "plaintiff had the burden to demonstrate the error in this case affected a substantial right, and was not merely a procedural error. Plaintiff has not done so." *Id.* (citing *Ludwig*, 681 F.3d at 1054).

The DOT raises a rebuttable presumption as to job classification. *Johnson*, 60 F.3d at 1435-36 (9th Cir. 1995). Pursuant to Social Security Ruling (SSR) 00-4p, an ALJ has an

1     affirmative responsibility to inquire as to whether a VE's testimony is consistent with the DOT

2     and, if there is a conflict, determine whether the VE's explanation for such a conflict is

3     reasonable. *Massachi v. Astrue*, 486 F.3d 1149, 1152-54 (9th Cir. 2007).  As stated by the

4     Ninth Circuit Court of Appeals:  "[A]n ALJ may rely on expert testimony which contradicts

5     the DOT, but only insofar as the record contains persuasive evidence to support the deviation."

6     *Johnson*, 60 F.3d at 1435-36 (VE testified specifically about the characteristics of local jobs

7     and found their characteristics to be sedentary, despite DOT classification as light work).  *See*

8     *also Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001) ("We merely hold that in order for

9     an ALJ to rely on a job description in the [DOT] that fails to comport with a claimant's noted

10    limitations, the ALJ must definitively explain this deviation.")  "Evidence sufficient to permit

11    such a deviation may be either specific findings of fact regarding the claimant's residual

12    functionality, or inferences drawn from the context of the expert's testimony."  *Light v. Social*

13    *Sec. Admin.*, 119 F.3d 789, 794 (9th Cir. 1997) (internal citations omitted).

14          The Court finds that the ALJ erred at step five.  First, the ALJ erred by finding that

15    plaintiff could perform "representative occupations such as dishwasher (DOT #318.687-010)"

16    and "night cleaner (DOT # 323.687-014)," and asserting that the VE's testimony "is consistent

17    with the information contained in the Dictionary of Occupational Titles."  AR at 27.  As argued

18    by the plaintiff, the VE testified during the hearing that a hypothetical individual with the

19    limitations adopted by the ALJ could perform the representative occupations of "dishwasher"

20    and "shelver."  AR at 64.  Thus, the ALJ erred by relying upon the job of "night cleaner" at

21    step five.

22          This error might have been harmless if the ALJ had identified a significant number of

23    other types of jobs that plaintiff could perform, and this testimony was consistent with the

24    DOT.  *See e.g., Meanel v. Apfel*, 172 F.3d 1111, 1114-15 (9th Cir. 1999) (holding that it was

REPORT AND RECOMMENDATION - 30

1    unnecessary to address a claimant's arguments regarding one of two jobs identified by the ALJ

2    given that the number of positions for one of those jobs – between 1,000 and 1,500 in the local

3    area – constituted a significant number); *Barker v. Secretary of Health & Human Servs.*, 882

4    F.2d 1474, 1478-79 (9th Cir. 1989) (finding that, even if certain jobs were excluded from

5    consideration, the remaining jobs constituted a significant number).  However, plaintiff has

6    demonstrated that the VE's testimony in this case regarding the duties involved in the

7    remaining dishwasher/kitchen helper position conflicts with the DOT.  The Commissioner does

8    not deny this conflict, but simply states that the VE testified that "dishwasher [was] a job

9    Plaintiff could perform and not kitchen helper[.]"  Dkt. 15 at 19.  As mentioned above, "an

10   ALJ may rely on expert testimony which contradicts the DOT, but only insofar as the record

11   contains persuasive evidence to support the deviation."  *Massachi v. Astrue*, 486 F.3d 1149,

12   1152-54 (9th Cir. 2007).  Where, as here, the ALJ failed to identify the conflict between the

13   VE's testimony and the DOT, let alone provide persuasive evidence to support the VE's

14   deviation, the Court cannot find that the ALJ's step five decision is supported by substantial

15   evidence.

16           Accordingly, this case must be REVERSED and REMANDED for the ALJ to

17   reconsider step five of the sequential evaluation process.  On remand, the ALJ is directed to

18   obtain additional testimony from a VE, and make an appropriate inquiry in accordance with

19   SSR 00-4p to determine whether the VE's testimony conflicts with the DOT.  If it does, the

20   ALJ must obtain a reasonable explanation for the conflict before relying on that testimony at

21   step five of the sequential evaluation process.

22

23

24

REPORT AND RECOMMENDATION - 31

1

## VIII.   CONCLUSION

2          For the foregoing reasons, the Court recommends that this case be REVERSED and

3   REMANDED to the Commissioner for further proceedings not inconsistent with the Court's

4   instructions.  A proposed order accompanies this Report and Recommendation.

5          DATED this 20th day of February, 2013.

6

7          _____

8          JAMES P. DONOHUE
           United States Magistrate Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24